UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**ANDRES DAVID RONDON SERRANO** and **ELLINOR RUTKEY**, *next friend of Andres David Rondon Serrano*,

Petitioner,

– against –

**MARKWAYNE MULLIN**, **TODD BLANCHE**, **KENNETH GENALO**, and **JEFFREY OESTERICHER**,

Respondents.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

26-CV-5612 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On September 17, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the *pro se* petitioner at 26 Federal Plaza in New York and transferred him to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (ECF No. 11 at 3–4.) Before the Court are the petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1), and application for interim release on bond pursuant to *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001) (ECF No. 20). As explained below, the Court grants the petition and denies the application for interim release as moot.

# BACKGROUND[1]

## I. Factual Background

### a. Arrival in the United States

The petitioner, a Venezuelan citizen, entered the United States when he was 19 years old. (ECF No. 11-2 ¶¶ 4–5.)

The petitioner was born with hydrocephalus, a condition defined by "abnormal buildup" of fluid inside the brain's ventricles. (ECF No. 20 at 5; ECF No. 22-1 ¶ 5.)[2] The petitioner's condition is managed by a "ventriculoperitoneal shunt" that goes from his brain to his abdomen to drain excess fluid. (ECF No. 22-1 ¶ 5.) In 2023, the year before the petitioner entered the United States, the petitioner's shunt ruptured, and he was hospitalized for weeks in a pediatric intensive care unit. (*Id.*) The petitioner requires regular monitoring and treatment by specialists "due to the risks of infection, malfunction, and drainage issues" (ECF No. 20 at 6); according to a declaration by a pediatric resident physician the petitioner submitted to the Court, "neurosurgeons are best equipped to determine the necessity and frequency of replacement." (ECF No. 22-1 ¶ 5.)

On April 3, 2024, the petitioner entered the United States, and Border Patrol took him into custody. (ECF No. 11-2 ¶¶ 5–6.) The next day, the government served him with a Notice to Appear ("NTA") charging him with being inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits, and their representations at the hearing before the Court on November 4, 2026. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

[2] A national study of patients with the petitioner's specific condition — "shunted congenital hydrocephalus" — showed that one quarter to one third of patients have "severe impairment that manifests in deficits in memory, executive function, and attention." (ECF No. 22-1 ¶ 7.)

as a noncitizen present in the United States without being admitted or paroled. (*Id.* ¶ 7.)[3] The NTA also instructed the petitioner to appear before an immigration judge in New York on December 19, 2024. (*Id.*) According to the government, it also issued a Form I-200 Warrant for Arrest and conducted a custody determination. (*Id.* ¶ 8; *see also* ECF Nos. 11-5, 11-6.) On April 5, 2024, the petitioner was released on his own recognizance. (ECF No. 11-2 ¶ 9.) One of the conditions of the release order was that the petitioner could not violate any local, state, or federal laws. (*Id.*; *see also* ECF No. 11-7.) The government says it initiated removal proceedings against the petitioner on the same day by filing the NTA with the Executive Office of Immigration Review. (ECF No. 11-2 ¶ 10.)

**b. Venue Changes in Immigration Proceedings**

On June 21, 2024, the petitioner filed a motion to change the venue of his immigration proceedings from New York to Colorado and provided a Denver address to support that request. (*Id.* ¶ 11.) An immigration judge granted the motion, but the order that was mailed to the Denver address was returned as undeliverable. (*Id.* ¶ 12.) The Denver immigration court mailed the petitioner a notice of a hearing, which was also returned as undeliverable. (*Id.* ¶ 13.) On January 5, 2025, the petitioner filed a change of address form, with a New York address. (*Id.* ¶ 14.) The Denver immigration court changed the venue back to New York, but that order was returned as undeliverable. (*Id.* ¶ 15.) On July 16, 2026, the petitioner filed another change of address form, with a hotel address. (*Id.* ¶ 17.) The government does not say whether it tried to mail anything to the petitioner at that address.

**c. Criminal Charges and Arrests**

[3] This is the only NTA that ICE has served on the petitioner. (*See* ECF No. 18.)

On January 28, 2025, the New York City Police Department arrested the petitioner and charged him with criminal possession of a loaded firearm in the second degree, and criminal possession of a controlled substance degree in the seventh degree. (*Id.* ¶ 18.) The prosecutor added new charges at arraignment, including criminal possession of an "ammunition feeding device" in the third degree, endangering the welfare of a child, and criminal use of drug paraphernalia in the second degree. (*Id.* ¶ 20; ECF No. 11-16 at 4.)

On January 29, 2025, the government issued a new Form I-200 warrant for the petitioner's arrest and served a Form I-247A Immigration Detainer on Queens Central Booking, where the petitioner was detained. (ECF No. 11-2 ¶ 19.) At some point, the petitioner was transferred to Rikers Island. (*Id.* ¶ 21.) On January 31, 2025, the government issued another Form I-200 warrant and Form I-247A Immigration Detainer and served them on Rikers Island. (*Id.* ¶ 21.)

On January 8, 2026, the petitioner pled guilty to criminal possession of a firearm, N.Y. Pen. § 265.01-B. (ECF No. 11-16 at 6.) The remaining charges were dismissed. (ECF No. 11-2 ¶ 23; ECF No. 11-16 at 7.) The petitioner was sentenced to time served. (ECF No. 11-2 ¶ 23.) The government asserts that the petitioner's conviction violated the terms of his Order of Release on Recognizance. (*Id.* ¶ 24.)

The petitioner was released from Rikers Island on January 9, 2026. (*Id.* ¶ 23.) The government says that ICE did not take the petitioner into custody because the New York City Department of Corrections did not honor the detainer. (*Id.*)

**d. ICE Arrest and Detention**

On September 16, 2026, the petitioner went to the emergency room because he had a "sharp pain" in his head. (ECF No. 17-4 at 4.) The emergency room doctors imaged his brain,

revealing loss of brain tissue, and referred him to a neurosurgeon for specialized care. (*Id.*) His appointment with a neurosurgical specialist was scheduled for September 30, 2026. (ECF No. 22-2 at 10.)

On September 17, 2026, the petitioner went to 26 Federal Plaza for a scheduled appearance in immigration court. (ECF No. 11-2 ¶ 26.)[4] That same day, ICE issued a new I-200 for his arrest and, according to the government, sought and obtained Kenneth Genalo's approval to arrest the petitioner at 26 Federal Plaza. (*Id.* ¶ 27.)[5] During the September 17th hearing, the petitioner experienced abdominal pain, dizziness, profuse sweating, and confusion. (ECF No. 1 at 11.) His friends called for an ambulance and helped him to a sitting area. (*Id.*) Before the ambulance arrived, ICE Enforcement and Removal Operations ("ERO") officers arrested the petitioner and moved him to a different floor for processing and for "further medical attention." (*Id.*; *see also* ECF No. 11-2 ¶ 28.)[6] The government asserts that the petitioner "refused to speak to the nurse" and "refused to go to the hospital with the ambulance." (ECF No. 11-2 ¶ 28.) The petitioner says he did not go to the hospital because ICE officers were mistreating him. (ECF No. 20 at 7.) The petitioner was transferred to the MDC the same day. (ECF No. 11-2 ¶ 32.)

During arrest processing, ICE executed a Form I-213 and an INA § 236(a) Initial Custody Determination. (*Id.* ¶¶ 29–30; *see also* ECF No. 11-19.) The same day, the government

---

[4] The petitioner's counsel explained at the November 4, 2026 hearing that the petitioner is in standard immigration removal proceedings and proceedings for special immigrant status. The record does not include the reason for the September 17th hearing or explain how the petitioner was notified to appear for it.

[5] Genalo is the ICE ERO Field Office Director for New York City.

[6] In 2025, ICE issued new guidance lifting restrictions on arresting people at courthouses, including 26 Federal Plaza. On May 18, 2026, Judge Kevin Castel enjoined ICE from arresting noncitizens pursuant to that revised policy while he considered an APA challenge to the policy. Because Judge Castel's order was in effect when ICE arrested the petitioner at 26 Federal Plaza, ICE's 2021 policy applied. As explained below, the Court decides the petition on other grounds, and does not address whether ICE violated Judge Castel's order or ICE's 2021 policy by arresting the petitioner at 26 Federal Plaza.

revoked the petitioner's Order of Release on Recognizance. (ECF No. 11-2 ¶ 31; *see also* ECF No. 11-21.) The government claims that ICE "had reason to believe Petitioner is an illicit trafficker in controlled substances" and is subject to mandatory detention under 8 U.S.C. § 1226(c)(1)(A). (ECF No. 11-2 ¶ 30.)

Since he has been incarcerated at the MDC, the petitioner has suffered from headaches, confusion, dizziness, and abdominal pain on his right side where the shunt is located. The petitioner missed his September 30, 2026 neurosurgery appointment because ICE took him into custody. He has still not seen a specialist.[7]

## II. Procedural History

On the day of his arrest, the petitioner, through a next friend, filed a petition for a writ of habeas corpus in the Southern District of New York. (ECF No. 1.) On September 23, 2026, Judge John Koeltl determined that venue was proper in the Eastern District of New York (ECF No. 7), and the case was transferred to this Court the next day.

On September 28, 2026, the petitioner appeared *pro se* in immigration court for a master calendar hearing; the hearing was rescheduled to October 5, 2026, to allow the petitioner time to find counsel. (ECF No. 11-2 ¶ 33.) Counsel has since entered an appearance on the petitioner's behalf. (*See* ECF No. 13.)

On October 2, 2026, the government responded to the Court's Order to Show Cause why the Court should not grant the petition. (ECF No. 11.) The petitioner replied on October 16, 2026. (ECF No. 17.) On October 22, 2026, the Court issued an order directing supplemental briefing regarding: (i) whether and when the government served a charging document on the

[7] On November 2, 2026, two days before the Court's November 4, 2026 hearing, the government requested an appointment with a neurosurgical specialist; as of the date of the hearing, that request was still "pending" with ICE. (ECF No. 23 at 4.)

petitioner informing him that it was detaining him pursuant to Section 1226(c); (ii) whether the petitioner is entitled to a determination by an immigration judge about whether Sections 1182(a)(2)(C) and 1226(c) should apply to him; and (iii) whether the petitioner has been afforded an opportunity for a hearing before an immigration judge. (*ECF Order dated Oct. 22, 2026*.) The government responded on October 27, 2026 (ECF No. 18), and the petitioner responded on October 29, 2026 (ECF No. 19).

On October 30, 2026, the petitioner filed a motion, based on his medical condition, for interim release pending the Court's decision on this petition. (*See* ECF No. 20.) The government responded on November 3, 2026. (ECF No. 23.) On November 4, 2026, the Court held a hearing at which the parties, including the petitioner, appeared. (*ECF Minute Entry dated Nov. 4, 2026*.)

## LEGAL STANDARD

A district court is authorized "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

### I. Statutory and Regulatory Framework

Section 1226 governs the arrest and detention of noncitizens pending their removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) provides that the government "may" detain a noncitizen pending removal. 8 U.S.C. § 1226(a). Section

1226(c), on the other hand, mandates detention of certain noncitizens; it reads that the government "shall" detain certain noncitizens. 8 U.S.C. § 1226(c).

"Prior to January 2025, § 1226(c) applied only to those who had committed or been convicted of certain offenses." *Peralta-Malla v. Mullin*, No. 26-CV-2903, 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026). "In January 2025, however, Congress passed the Laken Riley Act, which amended 8 U.S.C. § 1226(c) to add an additional category of individuals subject to mandatory detention under § 1226(c)." *Id.* (citing Laken Riley Act, Pub. L. No. 199-1, § 2(1)(C), 139 Stat. 3, 3 (2025)).

As relevant here, Section 1226(c)(1)(A) now provides that "[t]he Attorney General shall take into custody" any noncitizen who falls within one of five categories, including any noncitizen who "is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title." 8 U.S.C. § 1226(c)(1)(A). Section 1182(a)(2) provides that a noncitizen who the "Attorney General knows or has reason to believe" "is or has been an illicit trafficker in any controlled substance" is inadmissible. 8 U.S.C. § 1182(a)(2)(C)(i). "The plain terms of § 1182 (a)(2)(C)(i) require only a reasonable belief that the applicant has been engaged in drug trafficking; a conviction is not required." *Latty v. Lynch*, 672 F. App'x 127, 128 (2d Cir. 2017) (summary order) (citation omitted).

The Laken Riley Act is significant because it "permits mandatory detention to turn not only on a conviction, but also . . . on an arrest or charge alone," *Peralta-Malla*, 2026 WL 1346325, at *3 — or, as in this case, on even less: a "reasonable belief," *Latty*, 672 F. App'x at 128. "That feature of the statute makes precision especially important. Where the Government seeks to invoke a mandatory-detention provision that forecloses ordinary bond authority, it must

establish the statutory predicate with clarity." *Nosirov v. Rife*, No. 26-CV-1534, 2026 WL 916602, at *4 (E.D. Pa. Apr. 1, 2026).

## II. Due Process

Noncitizens detained under Section 1226(c) are not entitled to an initial bond determination. *Black v. Decker*, 103 F.4th 133, 142 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, 146 S. Ct. 2733 (2026), and *cert. dismissed sub nom. Genalo v. Black*, 2026 WL 2752021 (U.S. Sept. 16, 2026). They are, however, entitled to a hearing before an immigration judge to challenge whether the government has properly applied a mandatory detention category. *See* 8 C.F.R. 1003.19(h)(2)(ii). (*See* ECF No. 18.)

In seeking a writ of habeas corpus, the petitioner alleges that he was detained without notice or an opportunity to be heard in violation of the Constitution. (ECF No. 1 at 2.) The government asserts that the petitioner is not entitled to an individualized custody determination; the government contends that the petitioner is subject to mandatory detention pursuant to Section 1226(c), because he is inadmissible under Section 1182(a)(2)(C). (ECF No. 11 at 6.)[8] The petitioner challenges the reasonableness of the government's belief that Section 1182(a)(2)(C) applies. (*See* ECF No. 17 at 8–13.)

Whether or not the government had a "reasonable belief" that Section 1182(a)(2)(C) applied, it was required to provide the petitioner notice of the basis for detention.

---

[8] The government maintains that an ICE supervisory officer "determined, in his discretion, that there was sufficient reason to believe that Petitioner is an illegal trafficker in controlled substances" because he was charged but not convicted of a misdemeanor drug charge in 2025. (ECF No. 11 at 6.) As explained above, the petitioner was charged with several crimes, including criminal possession of a controlled substance — a misdemeanor — but pled guilty only to criminal possession of a firearm — which is less serious than the arrest charge, criminal possession of a weapon in the second degree. Even though all the other charges were dismissed, the government argues that the "totality of the charges" gave the ICE officer reason to believe that the petitioner is a narcotics trafficker, and therefore subject to mandatory detention under Section 1226(c). (*Id.*) The government also claims that the petitioner is associated with Tren de Aragua, but nothing in the record supports that claim. (ECF No. 11-19 at 5; ECF No. 11 at 3.)

> Where the ground for removal subjects an alien to mandatory detention, the charging document serves as notice to the alien of the circumstances relied on by the DHS to detain him. However, where the basis for detention is not included in the charging document, the alien must be given notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing.

*In Re Kotliar*, 24 I. & N. Dec. 124, 127 (BIA 2007).[9] The government does not dispute that when ICE arrested the petitioner at 26 Federal Plaza, it did not serve him with an NTA or charging document that would have given him "notice of the circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention." *Id.* In fact, it was not until the government responded to the Court's Order to Show Cause that it gave any description of the reasons for detaining the petitioner. (*See* ECF Nos. 11, 18.)

Nevertheless, the government asserts that the petitioner had notice because, "[w]hen ICE conducted a custody determination for Petitioner on September 17, 2026, it issued and served on Petitioner a Form I-286, Notice of Custody Determination ('I-286'), which notified Petitioner that he [could] request an immigration judge review of the determination." (ECF No. 18 at 3 (citing ECF No. 11-18 ("You may request a review of this custody determination by an immigration judge.")).)[10] But this document — the Form I-286 — had no information from which the petitioner could discern the basis for the government's decision to detain him, and it did not include the justification that the government includes in its response to the Order to Show Cause. (*See* ECF No. 11-18.) Nor did the government charge the petitioner with an offense

---

[9] "BIA decisions are binding on all DHS officers and immigration judges unless modified or overruled by the Attorney General or a federal court." Dep't of Just., *Board of Immigration Appeals*, https://www.justice.gov/eoir/board-of-immigration-appeals (last visited Nov. 5, 2026).

[10] The petitioner asserts, through counsel, that he cannot read English. (ECF No. 19 at 2.)

covered by Section 1182(a)(2)(C), or provide any other way for the petitioner to discover the basis for his mandatory detention and to challenge it, without filing this petition.

"Several district courts have applied the *Mathews* factors to habeas petitions brought by those detained under the Laken Riley Act on the basis of unproven, disputed criminal allegations and concluded that mandatory detention, without opportunity for a bond hearing, violated those petitioners' due process rights." *Peralta-Malla*, 2026 WL 1346325, at *3 (collecting cases); *see also Mathews v. Eldridge*, 424 U.S. 319 (1976). Courts applying the *Mathews* test consider: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor — the private interest affected by the government's action — favors the petitioner. Indeed, his interest is "the most significant liberty interest there is — the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). That interest is especially pronounced in this case. The petitioner has a serious medical condition that requires regular monitoring by neurosurgical specialists. It is difficult for him to request specialized care at the MDC because he does not speak English and, according to his lawyer, may have cognitive deficits — something the government does not dispute. (*See* ECF No. 17 at 14.)

The second factor also favors the petitioner. The "procedures used" for Section 1226(c) "include no mechanism for a detainee's release, nor for individualized review of the need for detention." *Black*, 103 F.4th at 152. "The only procedural protection in place is the *Joseph*

hearing, at which noncitizens can contest whether they in fact committed a crime that makes them subject to mandatory detention." *Id.* (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). But in this case, the petitioner did not know that he was subject to mandatory detention or why, and had no meaningful opportunity to advocate for himself at a *Joseph* hearing. Without any review of the government's determination that Section 1226(c) and Section 1182(a)(2)(C)(i) apply, the "risk of erroneous deprivation" of the petitioner's liberty interest is substantial.

Finally, the third factor — the government's interest — favors the petitioner. The government has no interest in detaining the petitioner with no review of ICE's initial determination that the he had to be detained under Sections 1226(c) and 1182(a)(2)(C)(i). And the government surely has no interest in detaining anyone unlawfully, particularly someone with a serious medical condition.

In short, the government does not explain why it did not issue a new NTA informing the petitioner of the basis for his arrest and detention, or why the Court should excuse its failure to do so. The law does not permit the government to arrest noncitizens and detain them without notice of the basis for detention — a necessary prerequisite for their right to challenge that detention. Accordingly, the Court has no trouble concluding that the government violated the petitioner's due process rights.

The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The government's ongoing detention of the petitioner, in the face of this failure of process, entitles him to immediate release.

## III. Exhaustion

The government argues that the petitioner was required to exhaust administrative remedies. (*See* ECF No. 18.) "Generally, principles of prudential exhaustion require a

noncitizen to pursue a *Joseph* hearing before raising § 1226(c) objections in habeas." *Vargas-Lopez v. Warden*, No. 26-CV-5014, 2026 WL 3082858, at *2 (E.D. Cal. Oct. 15, 2026), *report and recommendation adopted sub nom. Johnston Vargas-Lopez v. Warden*, No. 26-CV-5014, 2026 WL 3190283 (E.D. Cal. Oct. 23, 2026). However, the exhaustion requirement may be waived where, as here, "the government did not notify the petitioner that it considers him subject to § 1226(c) until its habeas filings." *Id.* The petitioner could not have exhausted administrative remedies because he did not have notice of the determination he was entitled to challenge. Moreover, the petitioner's claims involve statutory interpretation and "substantial constitutional question[s]," *Grance v. Maldonado*, 26-CV-3346, 2026 WL 1815931, at *4 (June 24, 2026), which are best adjudicated by the Court. Accordingly, exhaustion is not required here.

**IV. Other Arguments**

Because the Court grants the petition on other grounds, the Court does not reach the petitioner's arguments regarding the legality of his arrest at 26 Federal Plaza, his substantive due process arguments, or his claim for humanitarian relief due to his medical condition. For the same reason, the Court denies the petitioner's motion for interim release pursuant to *Mapp v. Reno* as moot.

## CONCLUSION

For these reasons, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is granted. The motion for interim release is denied as moot.

The government is directed to release the petitioner from custody immediately and within 24 hours of this Order. The government must return to the petitioner any and all funds and/or property that was seized from the petitioner at the time of arrest. The petitioner is entitled to "restoration of the status quo ante." *Blandon v. Maldonado*, No. 26-CV-1669, 2026 WL 790910,

at *6 (E.D.N.Y. Mar. 21, 2026) (citation modified). Therefore, the government must release the petitioner "without any release conditions, including but not limited to any electronic monitoring, such as GPS monitoring." *Id.*; *see also Menjivar Giron v. Genalo*, No. 26-CV-1714, 2026 WL 809965, at *6 (E.D.N.Y. Mar. 24, 2026).

The government is further directed to submit a letter to the Court certifying compliance with this Order within 48 hours.

The Court further orders that the petitioner shall not be re-detained without notice and an opportunity to be heard at a hearing before a neutral decisionmaker, where the government will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a) or § 1226(c).

The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

**SO ORDERED.**

s/ Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
November 5, 2026